ACCEPTED
03-17-00551-CV
21278577
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/13/2017 4:52 PM
JEFFREY D. KYLE
CLERK

No. 03-17-00551-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/13/2017 4:52:43 PM
JEFFREY D. KYLE
Clerk

IN THE
TEXAS COURT OF APPEALS
FOR THE THIRD JUDICIAL CIRCUIT

STATE OF TEXAS
For the Protection of
MARIA CAMILA BERNAL,
Plaintiff-Appellee,

v.

NICHOLAS VINCENT RUSSO,
Defendant-Appellant.

Appeal from County Court at Law #4
for Travis County
Cause No. C-1-CV-17-001153

_____

BRIEF FOR APPELLANT

_____

Clifford Swayze
1000 Heritage Center Circle
Round Rock, Texas 78664
Phone (512) 335-5245
Fax (512) 857-0762
e-Mail caswayze22@gmail.com

Attorney for Appellant,
Nicholas Vincent Russo

ORAL ARGUMENT REQUESTED

1 | P a g e

<u>IDENTITY OF PARTIES AND COUNSEL</u>

THE STATE OF TEXAS
      For the Protection of
      MARIA CAMILA BERNAL,
            Plaintiff-Appellee,

      v.                                    No. 03-17-00551-CV

      NICHOLAS VINCENT RUSSO,
            Defendant-Appellant.

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**A. Parties**

1. Plaintiff-Appellee:     The State of Texas
2. Real Party in Interest:   Maria Camila Bernal
3. Defendant-Appellant:  Nicholas Vincent Russo

**B. Attorneys for Plaintiff-Appellee:**

In the Trial Court & On Appeal     Jenny Anderson
                                         SBN 24027197
                                       Hilary L. Riley
                                       SBN: 24013404
                                       P.O. Box 1748
                                     Austin, Texas 78767
                                     TEL: (512)-854-4163
                                     FAX: (512)-854-9570

**C. Attorney for Defendant-Appellant:**

In the Trial Court & on Appeal     Clifford Swayze
                                         1000 Heritage Center Circle

Round Rock, Texas 78664
Phone (512) 335-5245
Fax (512) 857-0762
e-Mail caswayze22@gmail.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL…………………………………………4

STATEMENT OF THE CASE…………………………………………………7

STATEMENT REGARDING ORAL ARGUMENT………………………………8

STATEMENT OF THE ISSUES……………………………………...…9

STATEMENT OF FACTS …...………………………………………………10

SUMMARY OF THE ARGUMENT ……………………………...…………...19

ARGUMENT. ...……………………………………………...……….....20

I. APPLICABLE LEGAL STANDARDS…………………………...……21

    A.    STANDARD OF REVIEW ON DIRECT APPEAL .....................………21

    B.    STANDARD FOR GRANTING A PERMANENT PROTECTIVE ORDER……..23

II. MR. RUSSO DID NOT COMMIT THE OFFENSE OF STALKING AS DEFINED BY TEXAS PENAL CODE § 42.072 BECAUSE THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT………………………………………………24

    A.    THERE IS NOT A SCINTILLA OF EVIDENCE THAT MR. RUSSO COMMITTED THE OFFENSE OF HARASSMENT AS DEFINED IN TEX. PENAL CODE § 42.07(A)(7).....................……………………...25

    B.    THERE IS NOT SCINTILLA OF EVIDENCE THAT MR. RUSSO OTHERWISE ENGAGED IN CONDUCT THAT HE KNEW OR REASONABLY SHOULD HAVE KNOWN THAT MS. BERNAL WOULD REGARD AS THREATENING BODILY INJURY, DEATH, OR DAMAGE TO HER PROPERTY…………………………………………………27

CONCLUSION AND PRAYER……………………………………...31

Appendix…………………………………………………………34

# TABLE OF AUTHORITIES

Cases

*Uniroyal Goodrich Tire Co. v. Martinez,*
    977 S.W.2d 328, 334 (Tex. 1998)………………………………………….21

*Benoit v.Wilson*
    239 S.W.2d 792, 796-97 150 Tex. 273, 917(Tex. 1951)…………...……..…22

*City of Houston v. Hildebrandt*
    265 S.W.3d 22 (Tex.App. —Houston [1st Dist.] 2008, pet.
    denied) …………………………….......…………….………...............22

*City of Keller v. Wilson*
    168 S.W.3d 802 (Tex. 2005)…………………………….………………….21

*In re Doe*
    19 S.W.3d 249, 253 (Tex. 2000)…………………………….…………..21

*Kroger Co. v. Persley*
    261 S.W.3d 316, 319 (Tex. App.- Houston [1st Dist.] 2008,
no pet.) ……………………………………………………….…….............22

*Lakner v. Van Houten*
    No. 01-09-00422-CV, 2011 Tex. App. LEXIS 2412, 2011 WL 1233381, at
    (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.)
    (affirming grant of protective
    order)……………………………………………………………………22

*Ortiz v. Jones*
    917 S.W.2d 770, 772 (Tex. 1996)…………………………...………........22

*Ramo, Inc. v. English*
    500 S.W.2d 461, 467 (Tex. 1973)…………………………………….22

*Richardson v. Estate of of Smith*

No. 01-14-00034-CV, 2014 Tex. App. LEXIS 12333, 2014 WL 6068427 (Tex. App. —Houston [1st Dist] Nov. 13, 2014, no pet. ……………………..22


*Turner v. KTRK Television, Inc.*
38 S.W.3d 103 (Tex. 2000)…………………………………..……………...22

*Vongontard v. Tippit*
137 S.W.3d 109, 112 (Tex. App-Houston [1st Dist.] 2004, no pet.)……….21

*Shoemaker v. State for Protection of C.L.*
493 S.W.3d 710, 713 (Tex. Crim. App. 2016)…………………………………21

*McGowan v. State,*
375 S.W.3d 585 (App. 14 Dist. 2012)……………….........................30, 31

*Havner v. E-Z Mart Stores, Inc.,*
825 S.W.2d 456, 461 (Tex. 1992)……………………………………….....23

Ploeger v. State,
189 S.W.3d 799 (Tex. App.—Houston [1st Dist.] 2006, no pet.)………….24

Statutes

Texas Code Penal Code § 42.072

Texas Code of Penal Code § 42.07

Texas Code of Criminal Procedure Art. 7A.03

## STATEMENT OF THE CASE

Based on incidents recounted in a sworn affidavit (I CR 9-14), the State of Texas filed an application for a protective order on behalf of Ms. Maria Camila Bernal pursuant to Texas Code of Criminal Procedure Art. 7A.03 in County Court at Law #4 for Travis County. *State v. Mr. Russo*, No. C-1-CV-17-001153. (I CR 5-8)  Based on Ms. Bernal's affidavit, Judge John T. Wong issued a Temporary *Ex Parte* Protective Order. (I CR 15-18)  Following a hearing, Judge Denton issued a permanent Stalking Protective Order. (I CR 30-35)   Mr. Russo filed a Request for Findings of Fact and Conclusions of Law 2RR 37-38), and a Motion for New Trial. (I CR 39-42)  On July 21, 2017, Judge Denton denied the motion. (I CR 50)  Mr. Russo timely filed his notice of appeal on August 18, 2017. (I CR 51) Tex. R. App. Proc.  26.1.

## STATEMENT REGARDING ORAL ARGUMENT

This case involves interpretation of criminal statutes under which a lifetime Stalking protective order was entered. This protective order will restrict Appellant's liberty and freedom for the rest of his lifetime. Due to the complexity integral in construing the statutory language at issue here, and because of the permanent effects on Appellant of the trial court's interpretation of relevant statutes, Appellant believes the Court will benefit from oral argument. Further, the facts of this case are complex, and the Court would benefit from an explanation of the factual effect of the lifetime protective order. For all of these reasons, Appellant requests oral argument.

## STATEMENT OF THE ISSUES

ISSUE ONE: Whether the evidence is factually and legally sufficient to justify the issuance of a permanent Stalking Protective Order against Mr. Russo where the State failed to present evidence of any threat to Ms. Bernal and failed to establish that Mr. Russo possessed the requisite mens rea as required by statute.

**I.    Communications / Contact prior to February 19, 2015**

From mid-2014 until February 19, 2015, Mr. Russo and Ms. Bernal worked as weekend anchors and reporters in Midland at a station called KMID. 2 RR 56-57, 114. KMID had a small news room with no cubicles; desks were close to each other. 2 RR 58-59. The two lived in the same apartment complex and within 300ft of each other. 2 RR 112) Ms. Bernal invited Mr. Russo over to her apartment. 2 RR 112. They worked, partied, consumed alcohol, and socialized together on a regular basis. 2 RR 112-113.

On November 24, 2014, Mr. Russo gave Ms. Bernal some "Peeps" (an Easter candy) along with a letter. 2 RR 58-59. Ms. Bernal did not recall the contents of the letter. 2 RR 59. About the same time Ms. Bernal also started noticing that Mr. Russo "liked" some of her very old Facebook posts.  She understood this to mean he was looking through them and thought it "very strange."  2 RR 59.

On December 21, 2014, Mr. Russo gave Ms. Bernal a Christmas card wherein Mr. Russo indicated that she "was the best thing that had happened to him."  2 RR 61.  Ms. Bernal responded to the card by telling Mr. Russo that she was not interested in him.  2 RR 62.

On January 5, 2015, Mr. Russo fell on the ice and broke his teeth.  2 RR 62. While at the hospital, Mr. Russo sent a text message to Ms. Bernal asking for her

support. Ms. Bernal responded, "I am willing to help you but you need to understand that I am not interested in you and I do not like you, but I'm willing to go help you if that is what you need." 2 RR 62-63. Ms. Bernal went to the hospital with a group of people to visit or assist Mr. Russo. 2 RR 63.

On January 15, 2015, Mr. Russo asked if he could come to her apartment. Ms. Bernal believed he want to say thank you for her help. 2 RR 63. Ms. Bernal declined permission. 2 RR 64. Mr. Russo did not go to her apartment uninvited.

That same month, a group of co-workers from KMID – including Mr. Russo and Ms. Bernal -- went to a bar in Midland. 2 RR 64. Ms. Bernal was accompanied by a friend from church. 2 RR 64. Mr. Russo talked with Ms. Bernal's friend. 2 RR 64. Thereafter, Ms. Bernal noticed Mr. Russo at church two or three times but there is no evidence that he ever approached Ms. Bernal there. 2 RR 66-67.

On the weekends, when Ms. Bernal was the news anchor and Mr. Russo was the meteorologist, they were "pretty much alone" in the news room which provided opportunities for conversations between the two of them. RR 68. One conversation at the end of January was about a job over Ms. Bernal had received in Arkansas, also within the same company. 2 RR 67-68. After learning of the offer, Mr. Russo posted a comment on Facebook indicating that he would miss her. 2 RR 68. Later, Mr. Russo asked Ms. Bernal if she had taken the job. When she responded in the negative, Mr. Russo "jumped up in the air and said 'woo hoo.'" 2 RR 69. Ms.

Bernal responded by sitting Mr. Russo down and saying, "I don't like you" and "I don't want anything to do with you so I need you to stop." 2 RR 69. There is no evidence that Mr. Russo did not stop.

During this period of time Mr. Russo never threatened or assaulted Ms. Bernal. 2RR 113-114, 121-124. He never said anything obscene or sexual to her. 2 RR 122. Nevertheless, Ms. Bernal threatened to file a report against him. 2 RR 69. Mr. Russo said he thought they could stay friends. 2 RR 69.

Beginning around February 8, 2015, Mr. Russo listed some furniture for sale on Craigslist 2 RR 71., posted a photo on social media of himself throwing oranges or ice cream at a wall 2 RR 72., and posted something about wanting to kill himself 2 RR 72. On February 19, 2015, Mr. Russo resigned his position at KMID and moved to the northeastern United States. 2 RR 114. Mr. Russo has not physically been in the presence of Ms. Bernal since that time. 2 RR 114. It has been almost two-and-a-half years since the two have been in the same room together, and since Ms. Bernal block him from her personal Facebook and Twitter accounts 2RR 114, 115.

## II.     Communications between February 2015 and January 2017

In the sole text message conversation between Mr. Russo and Ms. Bernal between February 2015 and February 2017, Ms. Bernal asked Mr. Russo not to communicate with her anymore. 2 RR 12, 13; Exh 9. All other text message conversations admitted into evidence were between Mr. Russo mutual friends. 3 RR22-40; Exh 14.

Furthermore, all but one of Mr. Russo's social media posts were sent to Ms. Bernal by mutual friends or third parties. 2 RR 116. These included a random assortment of posts from Mr. Russo's Facebook account which include him talking about missing Ms. Bernal, being sad, learning Spanish, improving his career, learning how to dance, and becoming as physically strong as he could. 2 RR 89-90, 3 RR 6, 7, 9-11, 14-16, 22, 41-43; Exh 5, 7, 8, 10, 11, 12, 14, 15. Mr. Russo also shared Ms. Bernal's public work-related posts to his Facebook page. 2 RR 77. Mr. Russo also "liked" and "shared" Ms. Bernal's public news stories on a regular basis. 2 RR 77.

Finally, Mr. Russo made three comments on the public social media accounts of Ms. Bernal's co-workers. In the first, Mr. Russo states, "Ms. Bernal es un Buena presentadora de noticias! And I have finally got to put the Spanish I've been learning to good use! ☺ I hope she gets promoted!" State's Exh. 14. In the second, Mr. Russo states, "Que es estol?" and mentions or tags one of the Twitter account of one of Ms. Bernal's co-workers. State's Exh. 15. In the third, is Mr. Russo responds "No esta bien!" to a "tweet" from one of her co-worker's wherein the co-worker had posted a picture of his broken phone. The comment did not mention or allude to Ms. Bernal. State's Exh. 15. As of the time of the hearing, both parties had continued to communicate with their mutual friends. 2 RR 40-41.

Ms. Bernal did not testify to any negative comments Mr. Russo had ever communicated to her. 2 RR 123-125. In fact, Ms. Bernal said Mr. Russo has not threatened or assaulted her or anyone in her family. Specifically, near the conclusion of Ms. Bernal's testimony, the following exchange occurred:

MR. SWAYZE:      Okay, all right. And in the time that you were alone with him after the Superbowl or during that period of time that y'all were working alone at the station he never threatened you or threatened to assault you, he never assaulted you; correct?

MS. BERNAL:      No.

MR. SWAYZE:      Never grabbed you?

MS. BERNAL:      No.

MR SWAYZE:      Never groped you?

MS. BERNAL:      No.

MR. SWAYZE:      Never—you know, threatened a member of your family member or any of your members of your family?

MS. BERNAL      No.

MR. SWAYZE:      Never said anything like, if you don't date me I'm going to hurt you?

MS. BERNAL:      No.

MR. SWAYZE:      In fact he was excited to see you?

MS. BERNAL:      Yes.

MR. SWAYZE:      In fact the comments that he's directed towards you have always been positive?

MS. BERNAL: I do not recall every single comment that has been made between the two of us. So I would not be able to answer you in terms of all the comments he has.

2 RR 123, 124.

In February of 2015, Mr. Russo resigned his position at KMID and moved from Midland, Texas, to the northeastern area of the United States. 2 RR 58-59. Up until the time of "The Lavaca Street Incident," Mr. Russo had not been back to Texas in two years. 2RR 35. Ms. Bernal swore under oath that she had not been in the physical presence of Mr. Russo since that time. 2 RR 114.

### III. The January 9, 2017, "Lavaca Street Bar Incident"

Mr. Pedro Morales is one of Ms. Bernal's co-workers at Telemundo, a TV broadcast network. On or about January 9, 2017, both Mr. Morales, and an unnamed executive producer met for dinner after work at Lavaca Street Bar. 2 RR 151-152. The bar is located in Austin at "The Domain," a few miles away from the station. The bar is also located within 5 miles of the hotel where Mr. Russo was staying while in North Austin while visiting a friend in the area. 2 RR 31. Mr. Morales chose to eat outside of the bar due to the noise inside. While Mr. Morales was waiting for his dinner, Mr. Russo introduced himself and talked with Mr. Morales. 2RR 152. The conversation between Mr. Morales and Mr. Russo was about work, Mr. Russo's pending tour of the local CBS & Telemundo affiliate, and Mr. Russo's desire to

move to Austin. R.R. 152. Mr. Russo's tour of the station was scheduled a few days later in the morning; Ms. Bernal worked in the evening. 2 RR 27.

### IV. Officer McCloud's Investigation in January of 2017

Two days after the "Lavaca Street Bar Incident," the head of the local U.S. Marshal's Office asked the Austin Police Department if someone could look into a possible stalking case that involved a reporter "that worked—did cases for the marshals." 2RR 9. The case was referred to APD Officer Mark McCloud. 2RR 8-9. Officer McCloud met with Ms. Bernal in downtown Austin. 2RR 9. After their meeting, Officer McCloud proceeded to the Sleep Inn Motel in North Austin on IH 35 service road southbound where he met with Mr. Russo. 2 RR 17. During that meeting, Officer McCloud and Mr. Russo spoke for 45 minutes to an hour. 2 RR 20.

According to Officer McCloud, Mr. Russo discussed his connection with Ms. Bernal, that the two had worked together in Midland, that he felt like Ms. Bernal was the only woman for him, and that he has not met another woman that gives him feelings the way that she does. 2 RR 20. Also, according to Officer McCloud, Mr. Russo indicated that knew his romantic feelings were not reciprocated, but that he was under the impression that they could be friends. 2 RR 20. Also according Officer McCloud, Mr. Russo indicate that he would be flying out of Austin the next day and proceeded to delete Ms. Bernal's contact information from his phone in Officer

McCloud's presence. 2 RR 23. Officer McCloud did not believe that Mr. Russo was attempting to see or communicate with Ms. Bernal or that he posed a threat to her that night. 2 RR 24-25, 27. Rather, Officer McCloud believed that Mr. Russo was trying slowly reintegrate himself back into Ms. Bernal's life and posed a future threat to her safety. 2RR 27.

On cross-examination, Officer McCloud admitted that he knew about the "Lavaca Street Bar Incident" but that the Domain would be a logical place for a person visiting a friend and staying in North Austin to go. 2 RR 31. Officer McCloud also admitted that there was no evidence Mr. Russo followed Ms. Bernal's co-workers, and no co-workers ever witnessed Mr. Russo follow them. 2 RR 31-32. Officer McCloud had no knowledge of video tape surveillance from the TV station, nor did he check for any kind of security footage. 2 RR 32. The only information that Officer McCloud had pertaining to the interaction between Mr. Morales and Mr. Russo was that both were both present at the same bar and they discussed Mr. Russo seeking employment at the same TV station where Ms. Bernal works; there was no specific discussion of Ms. Bernal. 2 RR 33. Furthermore, Officer McCloud admitted that although both parties worked for the same company, he had no information that any threat, assault, or threat of assault has ever been perpetrated by Mr. Russo against Ms. Bernal 2 RR 34.; no evidence or information that Mr. Russo had ever threatened to harm Ms. Bernal's family, friends, or property 2 RR 34-35.;

and that he was unaware that the parties' had not seen one another in almost two years 2RR 35.

## SUMMARY OF THE ARGUMENT

Centered on what local newscaster, Maria Ms. Bernal, described as a fear that Appellant Mr. Russo "could get to a point where he will hurt me or kill [me]," the State of Texas obtained a civil "stalking" protective order on her behalf. Ms. Bernal's subjective fears resulted in a lifetime order prohibiting Mr. Russo from going within 200 yards of Ms. Bernal or communicating with her in any manner except through attorneys.

The protective order was granted under, Tex. Code Crim. Proc. Code §7A, which authorizes a lifetime protective order, if reasonable grounds exist to believe the applicant is the victim of stalking as defined in Tex. Penal Code §42.072. The order should be vacated as the evidence is legally and factually insufficient to support the trial court's findings that reasonable grounds exist to believe Ms. Bernal has been the victim of stalking as defined by Tex. Code Crim. Proc. Art. 7A.03 and Tex. Penal Code §42.072. There is no evidence that Mr. Russo threatened Ms. Bernal in any way, or had otherwise intentionally committed repeated acts of unwanted contact against her. The order's restrictions are damaging to Mr. Russo's professional prospects. Mr. Russo, a meteorologist, and Ms. Bernal, a reporter, are employed by the same company. The restrictions limit Mr. Russo's mobility within his company and his profession and will interfere with his career advancement by limiting professional opportunities for the rest of his life.

## ARGUMENT

ISSUE ONE: Whether the evidence is factually and legally sufficient to justify the issuance of a permanent Stalking Protective Order against Mr. Russo where the State failed to present evidence of any threat to Ms. Bernal and failed to establish that Mr. Russo possessed the requisite mens rea as required by statute.

At the close of the hearing on the State's request for a protective order against Mr. Russo, Judge Michael Denton stated that he had heard testimony about "a lot of" individual actions, but that his concern was the "continuum of actions" which all had to be viewed "in context" because stalking is a crime about numerous acts. Judge Denton noted that the parties' respective arguments hinged on whether Mr. Russo's actions constituted a "threat" to Ms. Bernal. Judge Denton gave examples of how context can change the meaning of an individual's words or actions from good or benign to threatening. Based upon his contextual analysis, Judge Denton found that Mr. Russo's words and/or actions constituted a threat to Ms. Bernal despite the fact that there had been no actual statement of a threat. 2 RR 167-169 Wherefore, Judge Denton granted Ms. Bernal a lifetime protective order against Mr. Russo. 2 RR 169-170. Mr. Russo filed a motion for new trial arguing, *inter alia*, that the evidence was factually and legally insufficient to support the entry of a stalking protective order under Texas Code of Criminal Procedure Art. 7A.03 and Texas Penal Code § 42.072, and that the Court's judgment was "contrary to the law

and evidence." (I CR 39-42. The Court denied the motion finding that "the standards for granting a new trial were not met." (I CR 50.

## I. Applicable Legal Standards

### A. Standard of Review on Direct Appeal

A legal-sufficiency challenge to a protective order, like any other legal-sufficiency challenge, may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *See Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). When the trial court is a factfinder, such as when it is making findings to determine whether to issue a protective order, the court reviews the evidence supporting the protective order under both legal and factual sufficiency standards. *Shoemaker v. State for Protection of C.L.* 493 S.W.3d 710, 713 (Tex. Crim. App. 2016), citing *In re Doe,* 19 S.W.3d 249, 253 (Tex. 2000), *Vongontard v. Tippit,* 137 S.W.3d 109, 112 (Tex. App-Houston [1ˢᵗ Dist.] 2004, no pet.). Under a legal sufficiency standard, the court considers all of the evidence in the light most favorable to the prevailing party, making every reasonable inference in that party's favor, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168

S.W.3d, 802, 827 (Tex. 2005); *City of Houston v. Hildebrandt,* 265 S.W.3d 22, 27 (Tex. App.-Houston [1st Dist.] 2008, pet. denied). If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, the court will overrule the issue. *Hildebrandt*, 265 S.W.3d at 27. Under a factual sufficiency challenge, the court examines all of the evidence in the record and will set aside the trial court's finding only if it is "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Kroger Co. v. Persley,* 261 S.W.3d 316, 319 (Tex. App-Houston [1st Dist.] 2008, no pet.); *Richardson v. Estate of of Smith*, No, 01-14-00034-CV, 2014 Tex. App. LEXIS 12333, 2014 WL 6068427, at *2 (Tex. App.-Houston [1st Dist] Nov. 13, 2014, no pet.). The trier of fact is the exclusive judge of which facts have been proven, which witness is credible, and the weight to be given any witness's testimony. *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 134 (Tex. 2000); *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796-97 (Tex. 1951). The court may draw inferences from the facts and choose between conflicting inferences. *Ramo, Inc. v. English*, 500 S.W. 2d 461, 467 (Tex.1973); *Lakner v. Van Houten*, No.01-09-00422-CV, 2011 WL 1233381, at *3 (Tex. App. —Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op). An appellate court will not overturn a factfinder's determination unless only one inference can be drawn from the evidence and it is counter to the

factfinder's resolution of that issue. *Havner v. E-Z Mart Stores, Inc.,* 825 S.W.2d 456, 461 (Tex. 1992).

## B. Standard for Granting a Permanent Protective Order

At the close of a hearing on an application for a protective order the court shall find whether there are reasonable grounds to believe that the applicant is the victim of, *e.g.*, stalking. *See* Tex. Code Crim. Proc. Ann. Art. §7A.03. A person commits the offense of stalking if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, *knowingly* engages in conduct that:

(1) constitutes an offense under Section 42.07 [harassment], or that the actor knows or reasonably should know the other person will regard as threatening:
(A) bodily injury or death for the other person;
(B) bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or
(C) that an offense will be committed against the other person's property;

(2) causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person to:
(A) fear bodily injury or death for himself or herself;
(B) fear bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship;
(C) fear that an offense will be committed against the person's property; or

(D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

*See* Tex. Pen. Code §42.072. Texas Penal Code § 42.07, referred to in subsection (1) above, sets out the elements of the offense of harassment. A person commits the offense of harassment if, *with intent to* harass, annoy, alarm, abuse, torment, or embarrass another, the person:

> sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

Tex. Penal Code § 42.07(a)(7).[1]

In order to satisfy the elements of Tex. Pen. Code §42.072 the court views the elements conjunctively; the State must prove Tex. Pen. Code §42.072(a)(1), (a)(2) *and* (a)(3). *See Ploeger v. State*, 189 S.W.3d 799 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("[T]he trial court erred in charging the statutory elements disjunctively, so that the charge allowed the jury to find appellant guilty upon finding fewer than all of the elements of the offense of stalking").

## II. Mr. Russo did not commit the offense of stalking as defined by Texas Penal Code § 42.072 because the evidence is legally and factually insufficient.

Mr. Russo does not dispute that the State presented evidence to satisfy Tex. Pen. Code §42.072(a)(2) and (a)(3), above. Nevertheless, Mr. Russo did not commit the

---

[1] Subsections (1) through (6) are inapplicable to the instant facts and so are not included here.

offense of Stalking as defined by Texas Penal Code § 42.072 because the evidence is legally and factually insufficient as to Tex. Pen. Code §42.072(a)(1) under either of the alternative manner and means.

## A. There is not a scintilla of evidence that Mr. Russo committed the offense of harassment as defined in Tex. Penal Code § 42.07(a)(7).

Harassment requires the accused act with "intent" to "harass, annoy, alarm, abuse, torment, or embarrass" another person. *See* Tex. Pen. Code § 42.07(a) Furthermore, the only requirement of § 42.07(a) remotely applicable involves subsection (a)(7), *i.e* sending repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. Read together, in order for Mr. Russo to "harass" Ms. Bernal, he needed to send "electronic communications" in a manner "reasonably likely to harass, annoy alarm, abuse, torment or embarrass" her, with the intent to actually carry out those goals. A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of this conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *See* Tex. Pen. Code §6.03.

Here, even viewing the evidence in the light most favorable to the State and Ms. Bernal, the record is devoid of evidence that Mr. Russo sent Ms. Bernal "repeated electronic communications" with the "intent" to "harass, annoy, alarm, abuse, torment, or embarrass" her. In fact, the evidence is that during the entirety of their acquaintance, Mr. Russo sent Ms. Bernal no more than two personal "electronic

communications": one to ask for help while he was hospitalized, and another which resulted in Ms. Bernal asking him not to communicate with her any more. 2 RR 62-63, 97[2] The only other "electronic communications" introduced into evidence were either text messages between Mr. Russo and mutual friends, or social media posts sent to Ms. Bernal by mutual friends or third parties. 3 RR6, 7, 9-11, 14-16, 22, 41-43; Exh 5, 7, 8, 10, 11, 12, 14, 15. To the extent, if any, that "liking" Ms. Bernal's own *public* social media posts constituted "electronic communications" within the meaning of the statute, there is nothing to indicate that Mr. Russo did so with any nefarious intent. Moreover, there is nothing about Mr. Russo forwarding Ms. Bernal's own *public* social media posts on to others which would constitute "communication" between Mr. Russo and Ms. Bernal. By way of comparison, if Mr. Russo had read a book Ms. Bernal had written, then forwarded it to a third person to read, such action would not constitute "communication" between Mr. Russo and Mr. Bernal. Likewise there is nothing about Mr. Russo posting a "Throwback Thursday" photo of himself at the anchor desk with Ms. Bernal in Midland as "communication" between Mr. Russo and Ms. Bernal. In fact Ms. Bernal would not have known about the photo post unless *she* had visited *his* Facebook page. Judge

---

[2] Even assuming, *without agreeing*, that the State proved there were "repeated electronic communications" from Mr. Russo to Ms. Bernal, Ms. Bernal affirmed that Mr. Russo did not make any negative comments towards her. 2 RR 124-125. While a negative comment is not *de facto* necessary to "harass," "annoy," or "alarm," it is to "abuse," "torment," or "embarrass." Thus, if the State intends to rely on electronic communications between Mr. Russo and Ms. Bernal it cannot reasonably argue that Mr. Russo's actions abused, tormented, or embarrassed her.

Denton tacitly recognized that the State had not proved stalking by "harassment" when, in rendering his order, he neither used the words "intentionally" or "knowingly" to describe any of Mr. Russo's actions, nor used the words "harass," "annoy," "alarm," "abuse," "torment," or "embarrass" as the purpose of Mr. Russo's actions. Under the harassment statute, Mr. Russo's actions had to be consciously nefarious to be criminal. They were not. Accordingly, to the extent the Court's order is based on Mr. Russo's alleged "harassment" of Ms. Bernal, it is contrary to both the law and evidence.

**B. There is not scintilla of evidence that Mr. Russo otherwise engaged in conduct that he knew or reasonably should have known that Ms. Bernal would regard as threatening bodily injury, death, or damage to her property.**

Alternatively, the stalking statute provides that a person commits the offense of stalking if, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, the person knowingly engages in conduct that the actor knows or reasonably should know the other person will regard as likewise threatening bodily injury, death, or an offense against property. Tex. Pen. Code §42.072(a)(1). Accordingly, the first element of the offense of stalking would also be satisfied if Mr. Russo had knowingly engaged in conduct which he knew or reasonably should have known that Ms. Bernal would regard as threatening bodily injury or death for her, for a member of her family or

household, or for an individual with whom she has a dating relationship; or that an offense will be committed against her property.

Here again, even viewing the evidence in the light most favorable to the State and Ms. Bernal, the record is devoid of evidence that Mr. Russo had made any such threat. None of the State's witnesses testified to any threats whatsoever against Ms. Bernal, against others affiliated with Ms. Bernal, or against Ms. Bernal's property. Quite to the contrary, a mutual friend, testified that Mr. Russo had not made any threat towards Ms. Bernal. 2 RR 143 Furthermore, throughout her own testimony, Ms. Bernal admitted that Mr. Russo had never threatened her or any member of her family, or even just yelled at her. 2 RR 113,114,121-122, 124. Finally, Officer McCloud's investigation[3] revealed no information that Mr. Russo had ever assaulted or threated to assault Ms. Bernal, any of her close friends, or her property. 2 RR 34-35. At the conclusion of Officer McCloud's investigation, he neither arrested Mr. Russo nor did he believe that Mr. Russo had committed any arrestable offense. 2 RR 24.

Given the overwhelming evidence of *no* threat, Judge Denton aptly conceded that Mr. Russo had made no explicit or overt threat. 2 RR 169. (no doubt in judge's mind regarding absence of any threat(s)). Nevertheless, Judge Denton discussed

---

[3] It is also worth repeating here that Officer McCloud *only* became involved in the situation because of Ms. Bernal's close professional affiliation with the local U.S. Marshalls. 2 RR 8-9.

certain statements and actions which he thought, in context, constituted an implicit threat sufficient to prove stalking. Judge Denton's analysis was in error.

According to the Penal Code, a person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *See* Tex. Pen. Code § 6.03. Here, there is no evidence that Mr. Russo knowingly engaged in conduct that he knew or reasonably should have known that Ms. Bernal would regard as threatening.

The fact that Mr. Russo "liked" and "shared" Ms. Bernal's *public* -- not private -- social media posts proves exactly nothing; such actions are ubiquitous, especially amongst the millennial generation and even more so amongst media professionals such as Mr. Russo and Ms. Bernal. Accordingly, even when viewed in the light most favorable to the State and Ms. Bernal, it cannot be said that Mr. Russo was aware that such actions were actually causing Ms. Bernal distress, or even that they were reasonably certain to do so.

However, even assuming *arguendo*, that Mr. Russo was either aware of, or reasonably should have been aware of, Ms. Bernal's distress, the stalking statute only prohibits his conduct if Ms. Bernal's distress amounted to a predictable fear of

bodily injury, death, or property damage. Tex. Pen. Code §42.072(a)(1). *See McGowan v. State*, 375 S.W.3d 585 (App. 14 Dist. 2012). It did not. First, there was *no* evidence of *any* prior unwanted physical contact between Mr. Russo and Ms. Bernal -- despite the fact that they worked in close quarters, lived in the same apartment complex, and ran in the same social circles. Neither had he threatened or assaulted anyone in her family. 2 RR 124. Indeed the evidence was that Mr. Russo had never committed *any* violent act. 2 RR 24. Second, Mr. Russo never said anything obscene or sexual to her. 2 RR 122. Third, the record reveals that Mr. Russo largely abided by Ms. Bernal's wishes. When, in January of 2015, Ms. Bernal declined Mr. Russo's request to visit her at her apartment he did not, thereafter, go to her apartment uninvited. 2 RR 64. When, later that same month, Ms. Bernal told Mr. Russo that she didn't want anything to do with him at all, he resigned his position and moved to another state. 2 RR 58-59, 114. When, in November of 2016, Ms. Bernal told Mr. Russo that she wanted him to leave her alone and never contact her again, Mr Russo responded that if that's what she wanted he would try his best. State's Exh. 9. And when, in January of 2017, Ms. Bernal learned that Mr. Russo had returned briefly to Texas and intended to tour her new TV station, she sought the assistance of legal authorities. After Officer McCloud visited with Mr. Russo at his hotel, Mr. Russo left town without visiting the station. 2 RR 154. He did not return. In short, there is no more than a scintilla of evidence to suggest that Mr.

Russo could have predicted that his consistently *non-violent* conduct would cause Ms. Bernal to fear that he would *hurt* her, *hurt* the people around her, or *damage* her property. Such evidence is basically limited to the self-serving testimony of Ms. Bernal that she *did* fear Mr. Russo and that Officer McCloud believed her.

The relatively recent case of *McGowan v. State*, 375 S.W.3d 585 (Tex. App.—Houston [14th Dist.] 2012, pet. refused), provides an interesting and informative point of comparison and contrast. In that case, McGowan was charged with the felony offense of stalking. At trial, the State presented evidence that McGowan had clearly *not* made any effort to abide by the complainant's request for no contact or communication. Instead he had continued making phone calls, leaving letters at her workplace, and sending emails via her social networking page. More importantly, McGowan *had made* multiple blog entries *explicitly stating his desire to hurt the complainant or those who helped her* and on at least one occasion had been observed peering through the windows of complainant's home. Ultimately it was the complainant, herself, who had been forced to change jobs and move just to get away from him. Predictably, the Court of Appeals affirmed McGowan's conviction. The distinctions make a difference.

**CONCLUSION AND PRAYER**

The Trial Court erred in finding that legal and factual evidence was sufficient to support the issuance of a lifetime Stalking protective order. The first element of

the offense of Stalking was not satisfied.  There was no evidence that Mr. Russo committed the offense of Harassment; that he threatened serious bodily injury, death, or damage to property; or even that he knew or reasonably should have known that Ms. Bernal would regard his conduct as threatening the same.  Wherefore, Mr. Russo respectfully requests that this Court vacate the lifetime Stalking protective order and grant such all other relief to which he is legally entitled.

[SIGNATURE ON NEXT PAGE]

Respectfully Submitted,

CLIFFORD SWAYZE
1000 Heritage Center Circle
ROUND ROCK, Texas 78664
Tel: (512) 335-5245
Fax: (512) 857-0762

By_____
Clifford Swayze
State Bar No. 24044245
caswayze22@gmail.com
Attorney for Appellant

CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2017, the foregoing document was served electronically on counsel of record as set forth below:

Jenny Anderson
SBN 24027197
Hilary L. Riley
SBN: 24013404
P.O. Box 1748
Austin, Texas 78767
TEL: (512)-854-4163
FAX: (512)-854-9570

_____
Clifford Swayze

CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3). I certify that this brief contains no more than 6,612 words, excluding the parts of the brief exempted by Rule 9.4(i)(1).

_____
Clifford Swayze

## Appendix

Tex. Code Crim. Proc. Ann. Art. §7A.03…………………………...APPENDIX 1

Tex. Pen. Code §42.072………………………………………… .APPENDIX 2

Tex. Pen. Code §42.07………….…………………………….. APPENDIX 3

Protective Order …………….…………………………...…. APPENDIX 4

Findings of fact and Conclusions of law…………………........APPENDIX 5

# APPENDIX 1

Art. 7A.03. REQUIRED FINDINGS; ISSUANCE OF PROTECTIVE ORDER. (a) At the close of a hearing on an application for a protective order under this chapter, the court shall find whether there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking.

(b) If the court makes a finding described by Subsection (a), the court shall issue a protective order that includes a statement of the required findings.

# APPENDIX 2

Sec. 42.072.  STALKING.  (a)  A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1)  constitutes an offense under Section 42.07, or that the actor knows or reasonably should know the other person will regard as threatening:

(A)  bodily injury or death for the other person;

(B)  bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or

(C)  that an offense will be committed against the other person's property;

(2)  causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3)  would cause a reasonable person to:

(A)  fear bodily injury or death for himself or herself;

(B)  fear bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship;

(C)  fear that an offense will be committed against the person's property; or

(D)  feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

(b)  An offense under this section is a felony of the third degree, except that the offense is a felony of the second degree if the actor has previously been convicted of an offense under

this section or of an offense under any of the following laws that contains elements that are substantially similar to the elements of an offense under this section:

    (1)  the laws of another state;

    (2)  the laws of a federally recognized Indian tribe;

    (3)  the laws of a territory of the United States; or

    (4)  federal law.

  (c)  For purposes of this section, a trier of fact may find that different types of conduct described by Subsection (a), if engaged in on more than one occasion, constitute conduct that is engaged in pursuant to the same scheme or course of conduct.

  (d)  In this section:

    (1)  "Dating relationship," "family," "household," and "member of a household" have the meanings assigned by Chapter 71, Family Code.

    (2)  "Property" includes a pet, companion animal, or assistance animal, as defined by Section 121.002, Human Resources Code.

# APPENDIX 3

Sec. 42.07.  HARASSMENT.  (a)  A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

(1)  initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;

(2)  threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property;

(3)  conveys, in a manner reasonably likely to alarm the person receiving the report, a false report, which is known by the conveyor to be false, that another person has suffered death or serious bodily injury;

(4)  causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

(5)  makes a telephone call and intentionally fails to hang up or disengage the connection;

(6)  knowingly permits a telephone under the person's control to be used by another to commit an offense under this section; or

(7)  sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

(b)  In this section:

(1)  "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system.  The term includes:

(A)  a communication initiated through the use of electronic mail, instant message, network call, a cellular or

other type of telephone, a computer, a camera, text message, a social media platform or application, an Internet website, any other Internet-based communication tool, or facsimile machine; and

(B)  a communication made to a pager.

(2)  "Family" and "household" have the meaning assigned by Chapter 71, Family Code.

(3)  "Obscene" means containing a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function.

(c)  An offense under this section is a Class B misdemeanor, except that the offense is a Class A misdemeanor if:

(1)  the actor has previously been convicted under this section; or

(2)  the offense was committed under Subsection (a)(7) and:

(A)  the offense was committed against a child under 18 years of age with the intent that the child:

(i)  commit suicide; or

(ii)  engage in conduct causing serious bodily injury to the child; or

(B)  the actor has previously violated a temporary restraining order or injunction issued under Chapter 129A, Civil Practice and Remedies Code.

# APPENDIX 4

# Cause No. C-1-CV-17-001153

STATE OF TEXAS
FOR THE PROTECTION OF

| | | |
|---|---|---|
| Maria Camila Bernal, <br> Applicant | § | IN THE COUNTY COURT |
| vs. | § | AT LAW NO. 4 |
| Nicholas Russo, <br> Respondent (DOB: 04/10/1991) | § | TRAVIS COUNTY, TEXAS |

## ~~AGREED~~ PROTECTIVE ORDER

On this day came to be heard this Application for a Protective Order, pursuant to and in accordance with:

[✓] Chapter 7A of the Texas Code of Criminal Procedure, or
[ ] Chapter 85 of the Texas Family Code.

## I. APPEARANCES

Applicant appeared in person and through the State's attorney and announced ready.
[✓] Respondent appeared in person and by and through counsel ( _Clifford Swayze_ _____ ) and announced ready.
[ ] Respondent appeared pro se and announced ready.
[ ] Respondent failed to appear, although duly served with citation and notice.

## II. FINDINGS

The Court, having considered all pleadings and heard the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied pursuant to Title IV, of the Texas Family Code and that the Court has jurisdiction over the parties and subject matter of this cause.

[ ] The making of a record of testimony was waived.
[✓] A record of testimony was made.

The Court finds that a protective order is in the best interest of the Applicant, the family or household, and the Court further finds that:

[ ] The parties have agreed to the following protective orders.
[ ] Family Violence has occurred and is likely to occur in the future.
[ ] Respondent caused serious bodily injury to the Applicant or a member of the Applicant's family or household.
[ ] Respondent was the subject of two or more previous protective orders rendered to protect the Applicant after a finding by the Court that the Respondent committed family violence and is likely to commit family violence in the future.
[ ] There was a previous protective order, which has expired, and the Respondent violated the previous protective order by committing an act prohibited by the order while it was in effect.
[ ] Reasonable grounds exist to believe Applicant has been the victim of a sexual assault.
[✓] Reasonable grounds exist to believe Applicant has been the victim of stalking.

## III. ORDERS

The Respondent is ORDERED, DIRECTED and COMMANDED:

(A) To refrain from committing acts of family violence against the Applicant or any member of the Applicant's family or household (including acts intended to result in physical harm, bodily injury, assault or sexual assault, or threats reasonably placing a member in fear of physical harm, bodily injury, assault or sexual assault), and not to use any force that would cause injury to the Applicant.

30

(B)     Not to communicate nor attempt to communicate with the Applicant or any member of the Applicant's family or household in a threatening or harassing manner.

[✓]     The Court finds that good cause exists to order Respondent not to communicate with Applicant in any manner whatsoever except through attorneys and it is so ordered.

(C)     Not to communicate a threat nor attempt to communicate a threat to the Applicant or any member of the Applicant's family or household through any other person.

(D)     Not to engage in conduct directed specifically toward the Applicant or any member of the Applicant's family or household, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass that person, and not to stalk the Applicant, as stalking is defined by Section 42.072, Texas Penal Code.

(E)     Not to possess any firearms or ammunition, unless he/she is a peace officer, as defined by Section 1.07, Texas Penal Code.

(F)     Not to go within 200 yards of those persons or locations listed on this page or any location where he/she knows the Applicant or the persons listed below to be, except where such is necessary to attend court proceedings, or:

[ ]     _____

---

| Protected Person: | Maria Camila Bernal | DOB: 02/08/1991 |
|---|---|---|

Residence:     CONFIDENTIAL

Travis County, Texas, or any subsequent residence

|  | Street | City | State |
|---|---|---|---|

Place of Work:  CBS Austin

Name of Business
10700 Metric Blvd., Austin

Travis County, Texas, or any subsequent workplace

|  | Street | City | State |
|---|---|---|---|

| Protected Person: | _____ | DOB: _____ |
|---|---|---|

Name of Facility:     Residence/School/Day Care Facility

Location of Facility:     _____

Travis County, Texas, or any subsequent residence/school/day care facility

| Protected Person: | _____ | DOB: _____ |
|---|---|---|

Name of Facility:     Residence/School/Day Care Facility

Location of Facility:     _____

Travis County, Texas, or any subsequent residence/school/day care facility

| Protected Person: | _____ | DOB: _____ |
|---|---|---|

Relationship:     _____

Location of Facility:     _____

Travis County, Texas, or any subsequent residence/school/day care facility

[✓]     Pursuant to § 85.007 of the Texas Family Code, the Court grants Applicant's request for exclusion of the address of his/her residence and place of employment, and the children's schools and child care facilities from this final Protective Order, and orders the clerk to exclude any such information in this order from the public records of the Court and maintain a confidential record of same.

31

(G)     Respondent is ordered to pay the sum of $156.00/$296.00 (money order only) to the Clerk of this Court, said sum being the costs of service, the actual costs of court, the costs incurred by the clerk but not paid by Applicant, and all other fees, charges or expenses incurred in connection with the protective order. Said sum is ordered to be paid by _____ at the Travis County Courthouse, County Clerk Civil Division, 2nd Floor, Rm. 222, P. O. Box 149325, Austin, Texas 78714-9325, for which let execution lie.

(H)     Respondent is ordered to pay nominal attorney's fees in the amount of $300.00 (money order only) by _____ to the Travis County Attorney's Office, Protective Order Division, P.O. Box 1748, Austin, Texas 78767, for which let execution lie.

(I)     Respondent is ordered to enter, meet attendance requirements, pay costs and complete the _____-week Domestic Violence Prevention Program (DVPP) at the Austin Stress Clinic, 5555 N. Lamar Blvd., Ste. L123, Austin, Texas, (512/326-1717). Respondent is ordered to enter the program no later than _____ and to complete the program by _____. Respondent is ordered to comply with any recommendation/referral for additional or alternate counseling within seven (7) days of the recommendation being made and ordered to complete the program as recommended. Respondent is ordered to sign a waiver for release of information upon registration so that the Travis County Attorney's Office may monitor his/her participation in the program.

(J)     Respondent is ordered to enter, meet attendance requirements, pay costs and complete the _____-week counseling course offered by the Resolution Counseling Program at Lifeworks, 835 North Pleasant Valley Road, Austin, Texas 78702, (512/735-2100). Respondent is ordered to enter the program no later than _____ and to complete the program by _____. Respondent is ordered to comply with any recommendation/referral for additional or alternate counseling within seven (7) days of the recommendation begin made and ordered to complete the program as recommended. Respondent is ordered to sign a waiver for release of information upon registration so that the Travis County Attorney's Office may monitor his/her participation in the program.

(K)     Respondent is ordered to submit himself/herself [ ] for an alcohol and drug evaluation and [ ] for a family violence assessment to Counseling & Education Services (CES) of Travis County, 1010 Lavaca St., 2nd Floor, Austin, Texas, (512/854-9540), by _____ _____. Respondent is ordered to comply with any recommendation/referral for additional or alternate counseling within seven (7) days of the recommendation being made, or within (7) days of the criminal case being adjudicated, and ordered to complete the program as recommended. Respondent is ordered to sign a waiver for release of information upon registration so that the Travis County Attorney's Office may monitor his/her participation in the program.

(L)     Respondent will not willfully nor intentionally damage, transfer, encumber, or otherwise dispose of any property owned or leased by the parties except in the ordinary course of business. The Respondent shall not harm, cause harm to come to, or remove from the possession of Applicant or any member of Applicant's family or household any pets owned by or in the possession of Applicant or any member of Applicant's family or household.

32

(M)     Any license to carry a concealed handgun issued to Respondent under Section 411.177, Government Code, is hereby suspended.

(N) _Respondent is ordered to pay Applicant 9281.60 and 570.00 for the reimbursement of the plane fees for a witness and service of the Respondent. This shall be paid through via check and delivered to the Travis County Attorney's office for Applicant on June 2, 2017._

(O)     Respondent is ORDERED to transfer any firearms in his/her possession to the Travis County Sheriff's Office located at The Ruiz Building, 5555 Airport Blvd., Austin, Texas by _____ _____ at _____a.m./p.m.   Respondent shall keep all the firearms unloaded in the trunk of his/her vehicle and upon arriving at the Ruiz Building he/she shall provide the receptionist with a copy of this order and notify them that he/she is there to turn in their firearms and/or ammunition. The Travis County Sheriff's Office shall retrieve the firearms from the vehicle and provide Respondent with a receipt for the firearms and/or ammunition. Respondent is ORDERED to provide a copy of the receipt from the Travis County Sheriff's Office to the Travis County Attorney's Office, Protective Order Division by _____ at _____a.m./p.m. The Travis County Sheriff's Office shall maintain the firearms in protective custody for the duration of this order or until further order of this Court.

_____

_____

_____

_____

This Court also finds that this order:

[ ✓ ]     has been served on Respondent in open court; or

[ ]     shall be personally served upon Respondent in the same manner as a writ of injunction; or

[ ]     shall be served on Respondent by registered or certified mail in accordance with Rule 21A, Texas Rules of Civil Procedure.

**A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500.00 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.**

**A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THIS ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000.00 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE OR A STALKING OFFENSE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE.   IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS.**

**NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER.**

33

A RESPONDENT ORDERED INTO COUNSELING OR INTO A BATTERER'S TREATMENT PROGRAM SHALL FILE AN AFFIDAVIT WITH THE COURT THAT HE/SHE HAS BEGUN THE PROGRAM OR THAT THE PROGRAM IS NOT AVAILABLE WITHIN A REASONABLE DISTANCE TO THE RESPONDENT'S RESIDENCE NO LATER THAN 60 DAYS AFTER THE PROTECTIVE ORDER IS SIGNED BY THE JUDGE. FURTHER, NOT LATER THAN THE 30TH DAY BEFORE THE EXPIRATION OF THE PROTECTIVE ORDER, RESPONDENT SHALL FILE A STATEMENT THAT HE/SHE COMPLETED THE PROGRAM. AN AFFIDAVIT MUST BE ACCOMPANIED BY A LETTER, NOTICE, OR CERTFICATE FROM THE PROGRAM OR COUNSELOR THAT VERIFIED COMPLETION OF THE PROGRAM OR COUNSELING. FAILURE TO SUBMIT THE AFFIDAVITS MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE IN THE AMOUNT NOT TO EXCEED $500.00 OR BY CONFINEMENT IN JAIL FOR A TERM NOT TO EXCEED SIX MONTHS, OR BOTH.

IT IS UNLAWFUL FOR A PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION.

AS PROVIDED IN TITLE 18, UNITED STATES CODE, SECTION 922 (g) (8), A RESPONDENT SUBJECT TO THIS ORDER, WHERE THE APPLICANT IS THE SPOUSE, FORMER SPOUSE, PARENT OF A CHILD OF THE RESPONDENT, OR AN INDIVIDUAL WITH WHOM THE RESPONDENT COHABITATES OR HAS COHABITATED, IS PROHIBITED FROM SHIPPING, TRANSPORTING, POSSESSING, OR RECEIVING FIREARMS OR AMMUNITION WHILE THE ORDER IS IN EFFECT. THIS INCLUDES FIREARMS OR AMMUNITION POSSESSED OR RECEIVED PRIOR TO THE ISSUANCE OF THIS ORDER. THE POSSESSION, RECEIPT, SHIPMENT, OR TRANSPORTATION OF FIREARMS OR AMMUNITION WHILE SUBJECT TO THIS ORDER IS A FEDERAL OFFENSE PUNISHABLE BY UP TO TEN YEARS IMPRISONMENT.

This Order shall be in full force and effect as to the parties:

[ ] for the term of two years, and will expire at midnight on _____
_____, **2019**, unless the Respondent is incarcerated on that date, or if the protective order would expire not later than the first anniversary of the date the person is released from incarceration, the order is automatically extended and will expire on the first anniversary of the date the person is released from incarceration, if the person was sentenced to more than five years, or the second anniversary of the date the person is released from incarceration, if the person was sentenced to five years or less, or

[ ✓ ] for the duration set forth in the Texas Code of Criminal Procedure Chapter 7A _For the_
_____ Lifetime of Respondent _____,
unless the Respondent is incarcerated on that date, in which case the order will remain in effect for one year after the date of the Respondent's release from incarceration.

34

This Order supersedes any Emergency Protective Order issued pursuant to § 17.242 of the Code of Criminal Procedure.

SIGNED this ___2___ day of ___Nov___, 2017.

_____
Presiding Judge

APPROVED AS TO FORM ~~AND CONTENT~~:

_____
Applicant


_____
LAUREN CISNEROS          24077475
HILARY L. RILEY          24013404
JENNY ANDERSON           24027197
CHELSEA KANCILIA         24086824
Assistant County Attorney
P.O. Box 1748
Austin, Texas 78767
(512) 854-4163
(512) 854-9570 FAX


_____
Respondent
Address: 104 E Main St. Apt 3
Flushing, MI 48433
Phone: 781-264-1851

Name: _____
Address: 1800 Heritage Center Ct.
Round Rock, TX 79664
Phone: 512-335-5245
Fax: 512 857-0761
SBN: 24042545
ATTORNEY FOR RESPONDENT / PRO SE

35

# APPENDIX 5

**Cause No. C-1-CV-17-001153**

STATE OF TEXAS
FOR THE PROTECTION OF

| | | |
|---|---|---|
| Maria Camila Bernal, | § | IN THE COUNTY COURT |
| Applicant | | |
| vs. | § | AT LAW NUMBER 4 OF |
| Nicholas Russo, | § | TRAVIS COUNTY, TEXAS |
| Respondent | | |

## APPLICANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

TO THE HONORABLE COURT:

COMES NOW, State of Texas for the Protection of Maria Camila Bernal, Applicant, and files this Proposed Findings of Fact and Conclusions of Law for consideration in this matter. Maria Camila Bernal is hereafter referred to as the "Applicant" and Nicholas Russo is hereafter referred to as the "Respondent."

### FINDINGS OF FACT

1. On June 2, 2017, the Court signed a judgment for a Lifetime Protective Order based on acts of stalking in this cause after hearing evidence.

2. There is no intimate relationship between Applicant and Respondent. Applicant and Respondent do not have any children together.

3. Applicant signed the Protective Order Affidavit on February 3, 2017, and the Affidavit was notarized that same day.

4. The Applicant was a resident of Williamson County, Texas at the time the Application for Protective Order was filed and at the time the hearing was conducted.

5. The Respondent was a resident of Genesee County, Michigan at the time the hearing was conducted.

47

6. Acts of stalking by the Respondent towards the Applicant occurred in Travis County, Texas.

7. A Temporary Ex Parte Protective Order was signed on February 3, 2017.

8. The Application and Affidavit for Protective Order and the Temporary Ex Parte Protective Order was served on Respondent on March 2, 2017, prior to the time the hearing was conducted.

9. The first setting on the Protective Order was February 17, 2017. Due to Respondent being served out of the state of Texas Respondent was not served until March 2, 2017 and the date of the next hearing was March 3, 2017. On March 3, 2017 an agreed reset was signed by Respondent and the State's Attorney and there were subsequent agreed resets signed until the final hearing was held on June 2, 2017.

## CONCLUSIONS OF LAW

1. Travis County was the proper venue for this cause under TEX. FAM. CODE § 82.003.

2. This Court had jurisdiction over subject matter of this cause under the Travis County Local Rules of Procedure and Rules of Decorum for the Travis County Courts at Law Travis County, Texas, TEX. PENAL CODE § 42.072, and TEX. CODE OF CRIM. PRO. CH. 7A.

3. This Court had jurisdiction over the parties of this cause.

4. Reasonable grounds exist to believe Applicant has been the victim of stalking as defined by TEX. CODE OF CRIM. PRO. ART. 7A.03 AND TEX. PENAL CODE § 42.072.

5. Respondent has committed acts of repeated and unwanted contact against the Applicant, which have alarmed the Applicant and put the Applicant in fear for her safety.

6. This Court found that the necessary prerequisites of the law were legally

48

satisfied pursuant to TEX. CODE OF CRIM. PRO. CH. 7A and TEX. PENAL CODE § 42.072.

7.     The necessary findings were entered pursuant to TEX. CODE OF CRIM. PRO. CH. 7A and TEX. PENAL CODE § 42.072.

RESPECTFULLY SUBMITTED,

/s/ Jenny Anderson
CHELSEA KANCILIA          24086824
JENNY ANDERSON           24027197
HILARY L. RILEY          24013404
LAUREN CISNEROS          24077475
Assistant Travis County Attorney
P.O. Box 1748
Austin, Texas 78767
(512) 854-4163
(512) 854-9570 FAX

The above Findings of Fact and Conclusions of Law have been delivered to the parties on July 7_____, 2017, pursuant to the Rule 297 of Texas Rules of Civil Procedure.

SIGNED this _____1_____ day of _____ 2017

_____
JUDGE PRESIDING

49